UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex. rel. ALICE C.
YANNITY, MAUREEN C. McNABB, and TRACEE
URQUHART,

                Plaintiffs-Relators,

                                            Case No. 08-11825

v.                                      Honorable Julian Abele Cook, Jr.

J&B  MEDICAL  SUPPLY  COMPANY,  INC.,  a
Michigan corporation,

                Defendant.

ORDER

        This is a civil lawsuit, in which the three individual Plaintiffs-Relators (Alice Yannity,

Maureen McNabb and Tracee Urquhart) have accused the Defendant (J&B Medical Supply

Company, Inc.) of (1) violating the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 -3733 through

fraudulent medical billing practices, and (2) committing acts of retaliation against them for

engaging in a protected activity in violation of the FCA, Michigan public policy, and Michigan's

Medicaid False Claim Act, Mich. Comp. Laws §§ 400.601 - 400.615.

        Currently pending before the Court are (1) two separate motions to dismiss filed by the

Defendant, (2) an unopposed request by the Plaintiffs-Relators for leave to file a first amended

complaint, and (3) a motion by the Defendant to unseal the remaining contents of the official Court

file. Each item will be considered in turn below.

I.

        The FCA was created in 1863 as a mechanism for addressing rampant fraud in Civil War

1

defense contracts. *Am. Textile Mfrs. Inst., Inc. v. The Ltd.*, Inc., 190 F.3d 729, 733 (6th Cir.1999). Yet, more recent amendments to the FCA were made with the goal of enhancing the United States' ability to recover losses that were incurred by the Government as a result of fraud.

In an effort to accomplish its goals, the FCA imposes liability upon "[a]ny person who . . . knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). It also prohibits a person from*, inter alia*, (1) knowingly using or creating false records as a mechanism for obtaining payment of false claims, or  (2) conspiring to defraud the United States Government by taking steps to procure the payment of a false claim.  This statute also authorizes private persons to bring civil actions for violations of § 3729 in the Government's name, and entitles those persons to collect a portion of any monies recovered. 31 U.S.C. § 3730(b)(1); 31 U.S.C. § 3730(d).

In such lawsuits – referred to as *qui tam* actions – the complaint is not immediately made available to the general public or even to the defendant.  Rather, the private person, who files the lawsuit (known as a "relator"),  must serve a copy of the complaint *in camera* upon the Government and disclose all pertinent evidence in his/her possession.  The complaint, which must remain under seal for a minimum period of sixty days, is never served upon the defendant until the Court orders the Plaintiff to do so.  31 U.S.C. § 3730(b)(4). Within this sixty day period, the Government may elect to intervene and proceed with the action along with the relator.  *U.S. ex rel. Summers v. LHC Group, Inc.* 623 F.3d 287, 291 (6th Cir. 2010).

## II.

All three of the Plaintiffs-Relators in this action worked in the billing department of the

2

Defendant which is a self-proclaimed "conglomerate medical business" that sells bulk medical and surgical supplies, medical equipment, laboratory supplies, and pharmaceuticals to public and private entities. According to them, the Defendant charges the State of Michigan and the United States Government with millions of dollars each year for its delivery of medical supplies. In their roles within the Defendant's medical department, it was their joint responsibility to process bills for this purpose.

Collectively, the Plaintiffs-Relators allege that the Defendant is defrauding the federal and state governments by engaging in intentionally corrupt billing practices related to Medicaid and Medicare. It is their contention that while employed by the Defendant, they identified, researched, and opposed a variety of fraudulent billing schemes. Furthermore, they claim that the Defendant has attempted to cover up its fraudulent practices by terminating anyone who fails or refuses to comply with its unlawful conduct. Each of the Plaintiffs-Relators attribute the termination of their employment to their refusal to participate in the Defendant's fraudulent plan.

The Plaintiffs-Relators filed their *qui tam* lawsuit on April 29, 2008. At the request of the Government, the Court allowed this lawsuit to remain sealed for more than two years while a federal investigation was undertaken to determine (1) the merit, if any, of the Plaintiff-Relators' claims, and (2) whether it would intervene in this action. On August 3, 2010, the Government filed a notice of its conclusion that, based on the ongoing inquiry, it was not able to make a decision as to whether it would or would not intervene at that time. This conclusion by the Government allowed the Plaintiffs-Relators to proceed with their lawsuit. As a result, portions of the official file were eventually unsealed in October of 2010. Shortly after bing served with copies of the complaint, the Defendant filed its pending motions to dismiss.

3

III.

The Plaintiffs-Relators have requested authority from the Court to amend their complaint. It is their collective belief that, although their current pleading can withstand a motion for dismissal under Fed. R. Civ. P. 9(b) and 12(b)(6), they need to update their claims with additional details. Specifically, they assert that their proposed new pleadings - if allowed by the Court - will enhance the existing accusations with a more detailed identification of names, dates, and other matters that are pertinent to this lawsuit. The Plaintiffs- Relators further note that their proposed amendments are timely and specifically designed to respond to certain arguments raised in the Defendant's motions to dismiss.

According to Fed. R. Civ. P. 15(a)(2), a court may "freely give leave [to amend a pleading] when justice so requires." This rule reaffirms the principle that cases should be tried on their merits "rather than [on] the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir.1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)). Nevertheless, a court is also entitled to consider various factors that weigh in favor of denying a leave to amend, such as undue delay, bad faith, or prejudice to the opposing party. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). If a proposed amendment would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may also disallow the proposed modification on the ground that it would be futile. *Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 382 (6th Cir.1993).

Here, the Defendant has not registered any objection to the currently pending motion as of this date. In fact, the Defendant, in the pleading wherein it seeks to obtain the dismissal of the complaint for failure of the Plaintiffs-Relators to comply with Fed. R. Civ. P. 9(b), acknowledges

4

the propriety of allowing the proposed amendment in an effort to cure its current deficiencies. The Court agrees with the Plaintiffs-Relators' request for relief, believing that the equities favor allowing them to amend their complaint. Hence, their motion to amend is granted.

III.

Next, the Defendant seeks to obtain a dismissal of this lawsuit on the ground that the complaint fails to identify the circumstances which gave rise to the alleged fraud or mistake with sufficient particularity.  In their view, it is indisputable that a complaint, which asserts violations of the FCA,  must comply with the strictures of Fed. R. Civ. P. 9(b).[1]  This is especially true in a case such as the case at bar wherein the Defendant is purportedly one of the largest home health delivery companies in the nation, with recent annual Medicaid billings that exceed seven million eight hundred thousand dollars.

In its judgment, a review of the complaint "demonstrates no attempt whatsoever" to identify a specific fraudulent claim for payment, which is the only basis upon which liability can attach under the FCA.  To support its argument for dismissal, the Defendant cites Sixth Circuit case law which requires a FCA complainant to "allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *See generally, United States ex. rel. Bledsoe v. Community Health Systems, Inc.,* 342 F.3d 634 (6th Cir. 2003) ("*Bledsoe I*") and *United States ex. rel. Bledsoe v. Community Health Systems, Inc.*, 501F.3d 493 (6th Cir. 2008) ("*Bledsoe II*").

Relying upon these requirements, the Defendant criticizes the complaint for failing to

---

[1]The rule provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

identify (1) its specific false billing claims; (2) the names of the patients involved; (3) the types of services that were rendered which resulted in a billing; and (4) the dates of service relating to certain allegedly fraudulent Medicaid claims.  It also points to the alleged insufficiency of pleading false schemes with particularity inasmuch as the statute imposes liability for the submission of false claims.  Thus, it is the Defendant's position that, although case law does not require the Plaintiffs-Relators to list every single patient, claim, or pertinent document, they must, at least, provide some representative examples.  *Bledsoe II* at 510.  Addressing its pending dispositive motion, the Defendant acknowledges that in lieu of dismissing the complaint, the Court should give their opposition an opportunity to amend their pleading in order to provide greater specificity.

The Plaintiffs-Relators respond by noting that the requirements of Rule 9(b) cannot be read in isolation from the notice-pleading standard of Fed. R. Civ. P. 8, which simply requires "a short and plain statement of the claim."  Although they acknowledge their duty under the federal rules to plead fraud with some reasonable specificity, they urge the Court not to impose a standard that is too harsh.  The PlaintiffsRelators also note that in *Bledsoe II*, *supra*, the Sixth Circuit held that, under the FCA, a relator need not set forth the specific identity of the persons within the Defendant's corporate structure who was responsible for submitting false claims.  Finally, they urge the Court to view their allegations  in its entirety since their inability to allege the specifics of actual false claims depends in large part upon their ability to obtain certain information that is within the Defendant's exclusive possession. Nevertheless, in light of the earlier decision by the Court to grant the Plaintiffs-Relator's request to amend their complaint, this motion to dismiss by the Defendant must be, and is, rejected for mootness.

IV.

6

The Defendant also seeks to obtain a dismissal of the Plaintiffs-Relators' retaliation claims in Count II of the complaint, which are based on the version of the FCA that was in effect in 2008 when the case was originally filed. In the Defendant's view, the most significant change in the statute is that it is now improper for an employer to retaliate against an employee who makes an effort to prevent a violation of the FCA. Further, the Defendant submits that when the complaint was filed, it was only improper to fire, demote, suspend or otherwise discriminate against an employee whose conduct was undertaken "in furtherance of an action" under the FCA. Inasmuch as a newer standard is more demanding, the Defendant seeks to force each of the Plaintiffs to proceed under this theory in pursuing their claims. Not surprisingly, it is the Defendant's contention that none of the Plaintiffs-Relators have made claims which show that their actions were committed in furtherance of an intent to file a *qui tam* action, approach the Government with information about the Defendant's conduct, or otherwise lead a reasonable person to believe they were contemplating future actions under the FCA. This is a standard, in the opinion of the Defendant, that is required by Sixth Circuit precedent since there must be a sufficiency of facts from which a reasonable jury could conclude that these employees were discharged because of activities which gave the employer a basis upon which to believe that they were contemplating a *qui tam* action. Accordingly, the Defendant claims that this aspect of the complaint has failed to state a claim upon which relief may be granted.

The Plaintiffs-Relators rejects the Defendant's view of the record, contending that each of them have identified, researched, and opposed an array of fraudulent schemes within the Defendant's billing practices during their employment. This activity, they believe, was a direct cause of their being terminated as employees. They argue that a retaliation claim under the FCA

is not complicated inasmuch as the Plaintiffs-Relators need only show that they were engaged in a protected activity of which their employer was aware. They also note that under the FCA, "investigation" in furtherance of a *qui tam* action is a protected activity, as is bringing alleged fraud to the attention of their supervisors. Finally, they conclude that even if there was a question as to whether the Defendant lacked notice of its potential FCA liability, such an issue creates a factual question that is unfit for a resolution by way of a motion to dismiss.

However, as was the case with the Defendant's motion to dismiss, this request to eliminate Count II of the original complaint must be denied for reasons that it is now moot.

## V.

Finally, the Defendant asks the Court to unseal the entire file in this matter, inasmuch as it - as of November 11, 2010 - had only received copies of (1) the order of October 6, 2010, (2) the complaint, and (3) the Plaintiffs-Relators' jury demand. It notes that due process requires the Court to grant access to the complete file in order for the Defendant to properly defend itself. Further, it asserts that to the extent the Government resists unsealing the documents for fear of jeopardizing its ongoing investigation, the Court should conduct an *in camera* review of any purportedly confidential or protected documents to assess the propriety of keeping them sealed.

Under 31 U.S.C. §§ 3730(b)(4) and (c)(3), if the Government elects not to proceed by taking over a *qui tam* action, the Plaintiffs-Relators "shall have the right to conduct the action." Although the Government is entitled under such circumstances to be served with copies of all pleadings and certain discovery material, there is no express right to keep files sealed from the Defendant indefinitely. *U.S. v. CACI International Inc.,* 885 F. Supp. 80, 81 (S.D.N.Y. 1995). That being said, the statute does not specifically address whether file materials beyond the complaint are to be

8

unsealed once the Court enters its order.  Several courts, after having considered this issue,  have found that a court has the authority to retain the filed documents under seal, or conversely, to make them fully available to the parties.  *See e.g., U.S. ex. Rel. Howard v. Lockheed Martin Corp.*, No. 1:99-285, 2007 WL 1513999, *2 (S.D. Ohio May 22, 2007); *U.S. ex rel. Yannacopolous v. General Dynamics*, 457 F. Supp.2d 854, 858 (N.D. Ill.2006); *U.S. ex rel. Health Outcomes Technologies v. Hallmark Health System, Inc.*, 349 F. Supp. 2d 170, 173 (D. Mass. 2004).

The Government opposes the Defendant's request for relief on grounds of confidentiality relating to its ongoing investigation.  It submits that the following factors should be considered by the Court when seeking to determine whether to disclose specific judicial records: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) if anyone has objected to the proposed disclosure, (4)  the identity of the objecting  person; (5) the strength of any asserted property and privacy interests; (6) the possibility of prejudice to those persons  who  have  opposed  disclosure;  and  (7)  the  purposes  for  which  the  documents  were introduced during the judicial proceedings. *EEOC v. Nat'l Children's Ctr., Inc*., 98 F3d 1406, 1409 (D.C. Cir. 1996).  The Government also asserts that (1) the Defendant does not argue that its request is based on the need by the general public to have access to such documents, (2) the challenged sealed documents have not been disclosed publicly or to the Defendant,  (3) the Defendant has not asserted any property interests in the matters under seal, and (4) it has a privacy interest in protecting the integrity of its investigation, its deliberations, as  well as the thought processes of its attorneys.

Notwithstanding these assertions, the Court believes that its decision must be guided by a different standard than that suggested by the Government.  In *qui tam* actions that are similar in

nature to the case at bar, courts are asked to balance the need for disclosure against the harms that could arguably flow from unsealing the documents.  *See e.g. Yannacopolous, supra* at 858; *U.S. ex rel. Mikes v. Straus,* 846 F. Supp. 21, 23 (S.D.N.Y. 1994); *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp*., 902 F. Supp. 189, 191 (E.D. Mo.1995).  Courts routinely take note of the strong presumption in favor of public access to judicial records in resolving these cases.  *U.S. v. Bon Secours Cottage Health Services*,  665 F. Supp. 2d 782, 785 (E.D. Mich. 2008) ("While public access to judicial records is not absolute, the strong presumption in favor of public access is not easily overcome.  . . . Significantly, the presumption in favor of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public, such as allegations of fraud against the [G]overnment.")) (internal citations and quotations omitted).

Upon applying this analysis here, the Court finds that the Government has not sufficiently established the risk of harm it might incur from a disclosure of the sealed records in this matter. Having reviewed the Government's requests for extensions and the documents that have been previously furnished by the Plaintiffs-Relators, the Court is not persuaded that an unsealing of the records would jeopardize its investigation, could cause harm to any prospective witness, or otherwise disclose its confidential methods for examining allegations of fraud and, possibly, criminal activity.  To the contrary, the investigatory procedures discussed in the Government's motions, as well as the documentary evidence, suggest that it has gathered routine information from entities that a lay person could readily identify as likely sources for a FCA investigation.

As to the competing interests of the Defendant in this matter, the Court disagrees with the Government's view that the Defendant is embarking on "an unwarranted fishing expedition," or that its request for information is "overly broad and speculative."  (Govt's. Resp. at 8).  As the

10

accused party, it is entitled to explore any relevant defenses and to understand the basis, if any, of the allegations being lodged against it. *Lockheed Martin, supra* at *3. Thus, in the absence of a showing by the Government that unsealing the record carries a significant risk of specific harm to its interests, the Court will grant the Defendant's request to unseal the entire record in this matter.

To that end, the Government is directed to provide the Court with a written *in-camera* description of the items within the currently-sealed file that it believes contain confidential or sensitive information that should be redacted or otherwise exempted from disclosure within a period of fourteen (14) days from the entry of this order. Any failure by the Government to do so within this time frame may result in the imposition of appropriate sanctions.

VI.

Therefore, for the reasons that have been stated above, the Plaintiffs-Relators' unopposed motion to amend the complaint (Docket Entry No. 31) is granted. The Defendant's requests to dismiss the complaint in its entirety (Docket Entry No. 21) and as to Count II only (Docket Entry No. 24) are denied as being moot.

The Defendant's request to unseal the official file (Docket Entry No. 22) is granted, subject to an in-*camera* review of the file contents by the Court in the manner as outlined above.


IT IS SO ORDERED.


Dated: <u>September 27, 2011</u>                    <u>S/Julian Abele Cook, Jr.         </u>
          Detroit, Michigan                    JULIAN ABELE COOK, JR.
                                                United States District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 27, 2011

s/ Kay Doaks
Case Manager