UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex rel. ALICE
YANITY, MAUREEN C. McNABB, and TRACEE
URQUHART,

               Plaintiffs-Relators,

                                          Case No. 08-11825
     v.                               Honorable Julian Abele Cook, Jr.

J & B MEDICAL SUPPLY COMPANY, INC.,

               Defendant.

<u>ORDER</u>

      The three individual Plaintiffs-Relators in this civil lawsuit, Alice Yannity, Maureen

McNabb, and Tracee Urquhart, have collectively accused the Defendant, J & B Medical Supply

Company ("J & B"), of violating (1) the Federal Claims Act ("FCA"), 31 U.S.C. § 3729, et seq.,

(2) public policy in Michigan as it pertains to acts of retaliation against employees; and (3) the

Michigan Medicaid False Claims Act ("MFCA"), Mich. Comp. Laws §400.610(c).

      Currently pending before this Court is J & B's motion for the entry of a judgment on the

pleadings pursuant to Fed. R. Civ. P. 12(c) or in the alternative, the granting of a summary

judgment as authorized by Fed. R. Civ. P. 56.[1]

---

      [1]Plaintiffs argue that J & B's motion is not ripe for review. Hence, it is their view that
this motion must be denied because J & B, in relying upon matters outside the pleadings, seeks
to obtain a summary judgment prior to the close of discovery which is scheduled to occur on
November 28, 2012. However, this dispositive motion, which seeks the adoption of a dispositive
resolution, does not require any additional discovery because the facts herein are not in dispute.
Therefore, the issues that have been raised in this motion are ready for review by this Court.

I.

J & B is a corporation which maintains its business operations in Oakland County, Michigan where it sells bulk medical and surgical supplies to private entities and the general public. All three Plaintiffs contend that they worked as employees in the billing department which enabled each of them to review all of J&B's billing records. As a result, they uncovered numerous instances of false billing to Medicaid and wrongful obtainment of reimbursement payments from Medicaid. It is the collective belief of the Plaintiffs that J & B, in an act of retaliation, wrongfully terminated them from their employment because they refused to participate in this alleged fraudulent scheme.

On April 29, 2008, the Plaintiffs filed this *qui tam* complaint against J & B pursuant to 31 U.S.C. § 3730, which remained under seal while it was under investigation by the federal government. After being directed by the Court to unseal the complaint, the Plaintiffs served J & B with a copy of the complaint on October 6, 2010. On September 28, 2011, the Plaintiffs filed their first amended complaint which was promptly challenged by J& B shortly thereafter (October 4, 2011) with a motion to dismiss. In its dispositive motion, J & B argued that the first amended complaint failed to meet the particularity requirements of Fed. R. Civ. P. 9(b). One week later (October 11th), J & B - citing to Fed. R. Civ. P. 12(b)(6) - filed another motion to dismiss in which it contended that count two of the complaint should be removed from any further consideration by the Court because it does not state actionable claim. This Court addressed and denied both of these motions in a single order on April 13, 2012.

On June 25, 2012, J & B filed a motion for a judgment on the pleadings as it relates to counts two, three, and four of the first amended complaint. As an alternative form of relief, J & B - in relying upon Rule 56 - also seeks to obtain a summary judgment on the same counts.

2

II.

The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Rule 12(b)(6). *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 279 (6th Cir. 2009). When considering a motion to dismiss under this Federal Rule of Civil Procedure, the Court accepts the plaintiff's well-pleaded allegations as true and construe each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to a plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a Rule 12(b)(6) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of

3

public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental documents attached to the motion to dismiss do not convert the pleading into an application for summary judgment if the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)). J & B also contends that it is entitled to a summary judgment on counts two, three, and four of the first amended complaint.

The purpose of the summary judgment rule, as reflected by Rule 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a

4

summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record which demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

III.

A.   Validity of the Contractual Limitation on the Statute of Limitations for Filing Suit

J & B first argues that the Plaintiffs' claims should be dismissed because their employment contracts require each of them to file any claims within a period of six months after termination. Thus, J & B submits that the Plaintiffs' claims are now barred by the parties' contractually agreed-upon statute of limitations which, in turn, entitles it to the entry of a judgment as a matter of law on

5

all three counts.

In response, the Plaintiffs maintain that the document ("Employee Restrictive Covenant"), upon which J & B has relied, is not an "employment agreement" that governs the parties' entire employment relationship. Rather, they submit that it is only a "restrictive covenant" which specifically addresses J & B's competitive business interests. Moreover, they contend that this document exclusively addresses the non-disclosure of confidential information, J & B's right to inventions, non-disparagement, and non-competition. Therefore, it is the Plaintiffs' contention that this "Employee Restrictive Covenant" - when read as a whole - does not encompass the statute of limitations period for the issues being litigated in the present case.

J & B asserts that "[t]he goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F. 3d 535, 543-44 (6th Cir. 2007) (citing *St. Clair Med., P.C. v. Borgiel*, 270 Mich.App. 260, 264 (2006)).When interpreting contracts under Michigan law, the courts "examine[ ] contractual language and give[ ] the words their plain and ordinary meanings." *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 503. As such, "[i]f the language of the contract is unambiguous, [the court] construe[s] and enforce[s] the contract as written." *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375 (2003). Furthermore, "a contract cannot be disjointed or particular parts separated from the balance, as it is necessary to consider all of the provisions of a contract in order to determine the meaning of any particular part as well as the meaning of the whole document." *Florida Canada Corp. v. Union Carbide & Carbon Corp.*, 280 F.2d 193, 195-96 (6th Cir. 1960); *see also* Restatement (First) of Contracts, § 235 ("a writing is interpreted as a whole and all writings forming part of the same transaction are interpreted

6

together").

This Court agrees with the Plaintiffs' view that when reviewing the document as a whole, the intent behind the scope of the "Employee Restrictive Covenant" was limited to those issues pertaining to J & B's competitive interests. The above-stated title of this document clearly indicates that it was intended to cover a limited and prescribed set of provisions relating to J & B's business interests, including the non-disclosure of confidential information, the right to inventions, non-disparagement, and a covenant not to compete. The language therein specifically describes its general purpose, as "it [is designed to protect] its various competitive business interests and confidential information via certain restrictions on the conduct of the employee."

Simply put, the litigated issues with regard to matters involving retaliation under the Federal and State False Claims Acts and Michigan public policy are not within the scope of the Agreement.

Even if the issues being litigated in the present case were covered under this Agreement, the wording of the arbitration and statute of limitations clause does not support J & B's position. Specifically, the clause states, "employee agrees he/she will not commence any action or claim relating to this Agreement for more than 6 months after termination of service" (emphasis added). The wording of this provision, "must be construed so as to give effect to every word or phrase as far as practicable." *See Certified Dry Cleaning Network, L.L.C.*, 511 F.3d at 543-44 (quoting *Hunter v. Pearl Assur. Co.*, 292 Mich. 543 (1940)). When this document is read and given its plain meaning, employees are obligated to wait for a period of six months after their termination to file any action or claim. As such, even if the litigated issues in this case are within the scope of this Agreement, the wording in this Agreement is sufficiently ambiguous and capable of conflicting interpretations by reasonable minds that it becomes a question of a material fact which must be

7

resolved by a jury. *See id.*

B.    Applicable Statute of Limitations for Federal False Claims Act

      In the alternative, J & B argues that count two of the first amended complaint should be dismissed because the Plaintiffs have filed this action which incorporates the retaliation claims outside of the applicable statute of limitations under the Federal False Claims Act, 31 U.S.C. § 3730(h). Here, J & B says that the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376, 1390 (2010), which established a new three year statute of limitations to the retaliation provision of the Federal False Claims Act, cannot be given retroactive effect. *See* 31 U.S.C. §3730(h)(3). Instead, J & B submits that *Graham County Soil & Water Conservation Dist. et al. v. U.S. ex rel. Wilson*, 545 U.S. 409 (2005), states that courts must apply the most closely analogous state limitations period to claims of retaliation brought under this statute. J & B proclaims that the most analogous statute in Michigan is the Michigan False Claims Act, Mich. Comp. Laws § 400.610. Like its federal counterpart, the Michigan False Claims Act lacks a statute of limitations period. Under this circumstance, J & B suggests that the most analogous applicable statute of limitations period should be taken from the Whistleblower Protection Act, Mich. Comp Law. § 15.361, *et seq*. If J&B's suggestion is adopted, it would appear that the Plaintiffs' claims, which were filed more than ninety days from the date of the alleged violations, would fall outside of the applicable limitations period.

      The Plaintiffs assert that because Congress has established a three year statute of limitations, "borrowing" from state law is unnecessary. Hence, in their opinion, the three year statute of limitations should be adopted to prevent frustrating the federal purpose of the Federal False Claims Act. As an alternative remedy, the Plaintiffs maintain that even if "borrowing" is thought to be an

acceptable alternative, the statute of limitations should not be taken from the suggested Whistleblower Protection Act. Instead, they submit that the most analogous state law is the Michigan False Claims Act. Therefore, it is their collective belief that this issue should be resolved with a declaration by the Court that the Dodd-Frank Acr 3-year statute of limitations is applicable or it should look to *Saunders v. District of Columbia*, 789 F.Supp.2d 48 (D.D.C. 2011) as an acceptable persuasive authority (state's more general tort statute of limitation period is applicable).

As a general proposition, "a presumption against retroactive legislation is deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). As such, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Only a handful of courts have addressed the issue as to whether the new three year statute of limitations under the Dodd-Frank Act can be applied retroactively. Section 4 of the Dodd-Frank Act clearly states, "[e]xcept as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment of this Act." Pub. L. No. 111-203, § 4 (2010). *See also Riddle v. DynCorp Int'l Inc.*, 733 F.Supp.2d 743, 747-48 (N.D.Tex. 2010) (Federal False Claims Act limitations do not apply because Section 4 of Dodd-Frank Act intended it to take into effect one day after passage). Therefore, the Court, noting the absence of case law to the contrary, concludes that the congressional intent behind the application of the Dodd-Frank Act statute of limitations does not support its retroactive application.

On the basis of this conclusion, the Court will apply the most closely analogous state law statute of limitations to the case at hand. *See Graham County.* In reaching this decision, the Court finds the reasoning in *Saunders, supra,* to be persuasive. Therefore, this Court will apply the three-

9

year period applicable to tort claims generally as the appropriate statute of limitations. Accordingly, J & B's motion to dismiss the Plaintiffs' claims in count two of the complaint is denied.

C.       Civil Cause of Action for Retaliation under the Michigan Medicaid False Claim Act

J & B asserts that count four of the first amended complaint should be dismissed because the Michigan False Claims Act, Mich. Comp. Laws § 400.610c, does not give authority to an individual to initiate a civil cause of action for retaliation. In the view of the Plaintiffs, the express language of this statute which provides that the "employer is liable to the employee for claims arising under this section," creates a cause of action for individuals.

In the opinion of the Court, the Michigan False Claims Act is the most analogous state law to the Federal False Claims Act. Both of these statutes contain provisions that protect employees from retaliation by their employers. The Michigan False Claims Act, Mich. Comp. Law § 400.610c, provides in relevant part:

> An employer shall not discharge, demote, suspend, threaten, harass, or in any other manner, discriminate against an employee in the terms and conditions of employment because the employee engaged in lawful acts, including initiating, assisting in, or participating in the furtherance of an action under this act or because the employee cooperates with or assists in an investigation under this act.

Similarly the Federal False Claims Act, 31 U.S.C. § 3730(h) states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

This Court accepts the position, as enunciated by the 10th Circuit in 1996, that "an

10

individual need not actually file a *qui tam* action in order to maintain a claim under section 3730(h)" to be persuasive. *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996); *but see Georgandellis v. Holzer Clinic*, No. 2:08-cv-626, 2009 WL 1585772, at *7 (S.D. Ohio June 5, 2009) (Federal False Claims Act protects individuals from retaliation only if the individual investigated or otherwise contributed to qui tam action). This Court finds that the analogous state law, (namely, the Michigan False Claims Act) similarly creates enforcement of private right of action mechanism). *See generally Beaudry v. TeleCheck Srvs., Inc.*, 579 F.3d 702 (6th Cir. 2009) (Congress created private right of action under Fair Credit Reporting Act which contains identical language to the Michigan False Claims Act retaliation provision). Therefore, J & B's motion to dismiss count four is denied.

D.     Preemption of Public Policy Claims

Finally, J & B contends that count three of the first amended complaint should be dismissed because the language in the Federal and the Michigan False Claims Acts provide an exclusive remedy for recovery. J & B submits that where there is a statutory prohibition against retaliation, a public policy claim is not sustainable. The Plaintiffs maintain that there is no reported case law which supports J & B's position that the specific statutes in question preempt the state law public policy claim. Furthermore, the Plaintiffs argue that a public policy wrongful discharge claim can only be preempted by a viable statutory claim which must  be determined by a jury.

J & B acknowledges that, although the state of Michigan recognizes the doctrine of at-will employment, "an employer is not free to discharge an employee at will when the reason for the discharge contravenes public policy." *McNeil v. Charlevoix Cnty.*, 484 Mich.

11

69, 79 (2009) (quoting *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695 (1982)). As such, the Michigan Supreme Court established three public policy exceptions under which an employer's discharge would violate public policy; namely, (1) the employee is discharged in violation of an explicit legislative statement which prohibits the termination of a worker who acts in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right that is conferred by a well-established legislative enactment. *Suchodolski*, 412 Mich. at 695-96. Therefore, "[a] claim for termination of employment in violation of public policy must be based on an 'objective legal source' establishing public policy." *Kimmelman v. Heather Downs Mgmt. Ltd.*, 278 Mich.App. 569, 573 (2008). Furthermore, "[a] cause of action for wrongful discharge may be implied where the alleged reason for the discharge of the employee was the failure or refusal to violate the law in the course of employment." *Silberstein v. Pro Golf Am., Inc.*, 278 Mich.App. 446, 452 (2008).

In the present case, if the Plaintiffs can establish that they were discharged for refusing to violate the law during the course of their employment, an independent valid claim exists. *See Irwin v. Ciena Health Care Mgmt., Inc.*, No. 294239, 2010 WL 4977928, at * 1-3 (Mich.App. Dec. 7, 2010); *see also Vagts v. Perry Drug Stores*, 204 Mich.App. 481, 485 (1994) ("a public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue"); *Kimmelman*, 278 Mich.App. at 573 *(*where there exists a statute explicitly proscribing a particular adverse employment action, it is the exclusive remedy, and no other 'public policy' claim can be maintained*)*. The Plaintiffs note that while they cannot seek damages under duplicative

theories, no authority bars them from recovering under the appropriate theory for different adverse actions as long as there is no overlapping relief. Therefore, J & B's motion to dismiss count three is denied.

IV.

For the reasons that have been set forth above, the Court denies J & B's motion for the entry of a summary judgment. (ECF 57).

IT IS SO ORDERED.

Date: October 10, 2012                    s/Julian Abele Cook, Jr.
                                          JULIAN ABELE COOK, JR.
                                          U.S. District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 10, 2012.

                                          s/ Kay Doaks
                                          Case Manager

13